Good morning, your honors. May it please the court, Frank Rothrock for the appellants. The district court ruled that the state court action that the appellants had brought against Robinson was no longer pending by late January of 1998. I think the core issue that is raised by that ruling is the effect of a stay under California law. What does a stay mean? May a case be stayed and at the same time be no longer pending or dismissed? And I think California law provides some straightforward answers that indicate that the trial court committed or the district court erred in its decision. First, the California Supreme Court has explained that a stay is distinct from a dismissal in the form of an unconvenience context. When a trial court stays a case in California, the court retains jurisdiction and can reopen the proceedings. California has a statutory definition of when a case is pending. It's Code of Civil Procedures, Section 1049, and it provides that a case is pending until there's a final judgment. And what we know here is, first, there was never a final judgment in the state court action. There was never an order lifting or revoking the stay. There was never an order extinguishing Robinson's agreement to pull the statute of limitations. And there was never a formal order of dismissal. Robinson and the district court cited several things in the record to support the view that the case was no longer pending at the latest, I think is what the district court said, by January 27 of 1998. First, there was a declaration by Robinson's in-house attorney, a Mr. Goetz, who said that an unnamed clerk on an unspecified date advised him that the case had been dismissed on July 7 of 1997. They pointed to the Register of Actions. It's really a case history report that's in the record. It had a date of July 7, 1997, and next to it, it said, Dismissed-Other. And then finally, the district court pointed to the Black's Law Dictionary definition of pending, which is undecided, awaiting decision. And none of those grounds support. Okay. Suppose we agree with you. What's the consequences of that? Well, the consequence of that is that the trial court's ruling that the statute which was the basis for the summary judgment, the district court ruled that the agreement to pull the statute of limitations was lifted in late January of 1998, and that the Chinese two-year statute of limitations and the California three-year statute of limitations, which the district court erroneously said was two years, had expired before the underlying action in the People's Republic of China was filed in January of 2001. If the trial court committed error and the California State action remained pending and the tolling agreement remained in effect, the statute of limitations had not expired. And that was the basis on which the trial court granted summary judgment. Okay. And so that basis is up. So if the statute of limitations had not expired, then that would make the Chinese judge default judgment valid? Or is that where the service of process issues come into play? Well, there are also service of process issues that have been raised by Robinson. The district court did not address those and did not base its summary judgment on the service of process issues. It relied solely on the notion or its ruling that the California State action was dismissed or no longer pending. What are you asking us to do? If we were to agree as Judge Wardlaw hypothesized, if we agreed that the record does not support that the statute, the agreement to toll the statute had been dissipated in some fashion so that the statute of limitations issue goes out, then what should we do? Remand to the district court to then proceed and address the service of process issues? Yes. Because for this reason, Your Honor, on the service of process issue, it's impregnated with factual issues. There are factual conflicts in the record. It would not support the summary judgment. The district court, Judge Cooper, did not expressly state why she did not address that issue. I think it's a fair inference, though, that she felt it was impregnated with factual issues. There are two challenges, basically, to service that were made by Robinson. One is that the correct papers or the required papers. There was the summary was included. Right. Two, there's a summary of the documents to be served, and there's the request for service of process. There's also some issues of Chinese law, too, aren't there? Is there whether what was ultimately, if there was service, isn't there some issue as to whether the correct date of response, 29 days versus 30 days, isn't that? I don't think that's an issue. Service was effective on February 17, 2004. The trial was May 25, 2004. That may be more a due process argument, that they just didn't have enough time to get ready for trial in China. I think the response to that is several-fold, but the key point is they had remedies under Chinese law. Yes. Did they ever move to set aside the default judgment in China? I'm sorry, did they ever? Did they ever move to set aside the default judgment? They did not. And they had a series of remedies. Stage one, they could have appeared and sought a continuance of the trial under Chinese law. Although the trial was held on March 25, the case wasn't closed and a decision wasn't issued until December 10, about nine months later, eight, nine months later, they could have moved to reopen the trial. Do we have any, if there's an issue about service, when, does the record establish when they became aware of the Chinese proceeding? Well, it's not entirely clear, Your Honor. It goes to the issue of whether Ms. Ragot, who was the recipient of service, is an appropriate person to receive service. When you say they could have moved in the Chinese court, that assumes that they knew there was something to move in and against. So when, so it was on Ragot or however her name is pronounced, whether or not she was an agent for service of processes, are you assuming that at least from that point they knew that there was a proceeding? Yes, I am. I think the record shows that Mr. Robinson, the president of the company, and Mr. Goetz, their in-house counsel, received the underlying papers. They filed declarations, and they're in the appellee's excerpt of record, saying they did not receive a package of documents that included the two Hague Convention forms. They didn't deny that they received the summons, the complaint, the notice to appear. Both the summons and the notice to appear had the trial date. They had remedies under Chinese law to seek a continuance, to reopen the trial, to challenge jurisdiction, and to appeal. And they're the ones who chose a Chinese forum, and yet they did not avail themselves of those procedural rights under Chinese law, and to challenge the Chinese judgment on due process grounds when they didn't even seek to exercise their rights under Chinese law, I submit, really undercuts their argument. On the service issue, I think the factual conflict runs to both what documents they were served with. Were they served with these two Hague Convention forms, and did they have to be served with them? And then there's an issue about Mr. Rigo's status. There are two Hague Convention forms at issue. One is the request for service under Article III of the Hague Convention. Kennedy. Are you asking us to decide that at this point, or? I don't think the Court needs to decide that, Your Honor. Then we don't really need to address it. You actually don't really need to take up all your time, given how long this morning has been. You can reserve the remaining time if you want. We can ask opposing counsel some of these questions. Can you please record? Good morning. Gary Lorsch on behalf of the appellee in this matter, Robinson Helicopter. Before I go into my remarks, I want to address some of the comments and points raised by counsel for the plaintiff and appellants in this matter, because I think, in fact, they are incorrect as both a matter of fact and as a matter of law, and will allow this Court to quickly dispose of this issue. The first issue is the matter of whether the California State court action was pending as of the January 25, 1998, date. The district court said no. The district court said no. And in fact the problem is the district court seems to have relied exclusively on a very abstruse and ambiguous statement in the case history that said 7-7-97 dismissed other. In fact, Your Honor, the court did not do that. What the court said was there is this reference in the record to a dismissal of 7-7-98. But then what it did is it gave the plaintiffs the benefit of the doubt up through January of 1998 when the trial court in the California State court action denied for the second time the motion to lift the stay and significantly put the case back on the civil active list. And that, Your Honor, is critical. And the district court actually noted that in its decision. The California State court action as of January 1998, and we would submit from months in advance of that point in time, was inactive pursuant to the court. I don't understand what an inactive stay is. The Superior Court said on January 27, 1998, quote, the stay on the instant action as ordered on 11-8-95 and later affirmed by the court of appeal on 7-7-97 remains in effect. A stay is a stay is a stay. Where do you get this concept of inactive stay? Your Honor, it's not an inactive stay. It's the case. No, I apologize. If I use that phrase, Your Honor, I apologize. The stay was in effect. That's fine. Entire time. That's fine, Your Honor. Yes. Well, we can see that. Isn't on the waiver the acceptance of tolling the statute of limitations? I'm sorry, Your Honor? Subject to the tolling of statute of limitations. Well, subject to the tolling of the statute of limitations and also subject to just general principles of fairness. Well, wait a minute. You selected the forum. You're the ones that said we want to go to PRC. Your Honor, that forum was selected back in 1995. Well, all right. With the expectation that the plaintiffs would proceed diligently in that forum. They did. They kept getting their case dismissed on your motions. Your Honor, respectfully, that's not the case. They tried once in 1995. Excuse me. They tried twice. But the second time that the case was dismissed in 1995 on the grounds that the court in China believed that there was an arbitration clause, what's very interesting from the absence of the record is that the court in China believed that there was an arbitration clause. And your client didn't argue that there was an arbitration clause that bound them to arbitration? Absolutely not, Your Honor. Just to the contrary. In fact, in July of 1995, some five months in advance of the People's Republic of China dismissing that case, Robinson made it clear to the plaintiffs that the purchase agreement that was entered into between the dealer in China and the plaintiffs, Robinson was not a party to that action. That was made clear in Mr. Robinson's declaration, submitted in support of the reply to the opposition to the motion to stay based on forum noncommittee. And this was in China? No. This was the one, the stay. Did you make the motion to stay? You made the motion to stay the State court proceedings? In California. In California. Because you wanted to go to China. Correct. In 1995, you made it. In 1995. And one of the conditions was that RHC agrees to tolling of the statute of limitations during the pendency of this action in California. That is correct, Your Honor. And then later on the Supreme Court said, and it's been pending ever since. Well, no. I don't understand your argument at all. The Superior Court. Your Honor, there's a distinction between a stay and whether or not a case is pending. The stay simply was in effect to allow the California court to retain jurisdiction to address future problems. You're going to have a hard time convincing anybody of that argument. Your Honor, I would suggest the Court may want to take a look at the case of Colvig, C-O-L-V-I-G. Counsel, it's really simple. I mean, in order to dismiss a case, you have to lift the stay. There's no order lifting the stay. It just was moved from an active status to an inactive status, which I've done to cases where I know I'm staying pending arbitration or something. It's done all the time, active to inactive. And it doesn't mean anything more than that. It's still a stay. And if something is – and if the stay isn't lifted, the case is still pending. And we decide – Your Honor, respectfully – I mean, that's just the law. Your Honor, I respectfully disagree with that. I do not believe that that is the law. There are cases which – which talk about a distinction between whether or not a case is active versus whether or not a court has simply retained jurisdiction for future purposes. And that's all the California – There is case law on that. That's right. And that's all that happened here. But that doesn't – no, that's not what happened here. Well, Your Honor, then, taken to its extreme, or taken to, in fact, its logical conclusion, that would effectively give the plaintiffs in this case an unlimited and indefinite opportunity – No, they tried. Their motions that they brought that you quoted were motions to lift the stay and restore it to the civil active list in the L.A. Superior Court. Denied. What else are they supposed to do? But that ended, Your Honor, in January of 1998. Okay. They could not proceed then again in China for another three years. And that is the – and that is part of the problem. Well, yeah. Then they tried arbitration route. Which was an improper form. But the Chinese court said, no, we're not going to proceed in China because you have this case pending out in L.A. Superior Court. Isn't that correct? No, Your Honor. The Chinese court never denied their opportunity to proceed in China based on the pendency of the California State action. July 27, 1995, the High People's Court refused to accept jurisdiction because a ruling resolving a dispute that occurred with this contract was given in California. Your company should act according to the agreement of this contract. Okay. Your Honor, that is – I stand corrected. That is the first action. But then, Your Honor, recall there is a later action that they attempted to file in the People's Republic of China later that year, which resulted in a dismissal on December 27, 1995. Your Honor, I also don't want to lose sight of the fact, as I started to say before, what the plaintiffs were asking for and what the unfortunate result would be is they would then get to decide when they were going to proceed, whether it be 3 years, 10 years, or 100 years down the road. All right. Let's assume that they don't get to decide that. You're going to run out of time. So could we just – we have your arguments. Let's focus on assuming that the statute of limitations doesn't cut in your favor, what else is there that's at issue in this case? Well, a number of things, Your Honor. They say the service of process issue. Well, the service of process certainly – Okay. And do you agree that if we disagree with you on the statute of limitations that the appropriate step then is to remand to the district court so you folks can prolong this litigation for another number of years on the issue of appropriate service of process? No, Your Honor. I do not. I think the Court has before it all of the relevant facts, all of which, Your Honor, are undisputed. The only thing – Your Honor, if I may, and I – So you want us to grant summary judgment in your favor on that issue? To affirm summary judgment, yeah, on that grounds. What was the summary judgment that the district court granted on service of process? The Court did not.  That's the point. You're asking us to do that. Well, in its capacity as reviewing this matter de novo and having the issues properly presented to it. And again, just very quickly, Your Honor, and then I'll just move on. The record is very clear. There is no dispute. Ms. Rougeau was not an authorized agent for purposes of service of process. The record is also further clear that plaintiffs did not satisfy their burden of establishing even what was served on Robinson. The request for service of judicial documents abroad doesn't even mention any documents on the form. The summary that was completed mentions only the summons, doesn't mention the complaints or any other documents that were allegedly served. I think you're arguing – you're arguing disputed facts, and we're not going to decide disputed facts, so we can't. Your Honor, the last point, then, that I will raise today is the district court's decision to grant summary judgment in favor of Robinson was not based solely on its determination that the statute of limitations had run. It was also based on a determination that the underlying action was stale and that 7 years had passed by the time that an effective action allegedly was filed in China. Some 10 years had passed before Robinson was purportedly served with an action, and that is simply – Refresh my recollection. The district court said as an alternative ground for dismissing this case, I'm finding that it's stale. The court did – Identify that as an alternative ground for dismissing the action. Yes, I believe so, Your Honor. You believe so or it did? It did, Your Honor. Do you have the language right there? I will in one second, Your Honor. No, we always ask. That is very true, Your Honor. So you should have it right there. ER what? Your Honor, at the record, page 12, line 8, there is simply no basis for permitting plaintiffs to enforce a judgment obtained on a clearly stale claim due to the foreign court's misapprehension of critical facts of which plaintiffs should have ensured it was informed. Well, I don't think that quite says what you represented. It said that's not an alternative basis. That's simply a use of a descriptive word to describe what's going on. It's clear to me that it was done on the statute of limitations ground. Well, Your Honor, it was also done on contrary to public policy grounds. And that's also clear at page 11 of the record where they talk about the court talks about enforcement of PRC judgment being contrary to public policy. Yes, but if your agreement to toll the statute of limitations and to stay are still in effect, I think it undercuts all of that. Your Honor, respectfully, I have to disagree with that. I understand that. Your Honor, finally, with respect to the remedies under Chinese law, there is nothing before this Court that states that Robinson had those remedies under Chinese law. And, in fact, it wasn't Robinson's necessary obligation to do so. Robinson also had the remedy, as it exercised in this case, to collaboratively attack enforcement of the judgment based on the grounds that it did. All right. Thank you very much, counsel. Thank you. Very briefly, in terms of Robinson's remedies under Chinese law, I would invite the Court's attention to the excerpts, page 248, that identifies the different provisions of the Chinese civil law that would have given them a chance to challenge jurisdiction, seek a continuance, or to appeal. I would submit on the service issue, there's at least a tribal issue factor under this Court's direct mail decision. And in terms of whether the stay really wasn't a stay and the case was somehow dismissed or not pending, even though the stay wasn't lifted, I don't think we can get clearer language than the California Supreme Court's decision in Archibald, which says that when a case is stayed, the trial court retains jurisdiction and can resume the proceedings. And one example Justice Trebiner gave in that decision was where things go too slowly in the foreign court. Robinson could have come in and sought to lift the stay, could have moved for dismissal on the grounds that the appellants had been dilatory. And a lot of things happened over the course of this case. Three different actions were filed in the PRC. Two actions in California, if you include the underlying action here. We went to arbitration. There's an arbitration part of the agreement, an appendix to the agreement, and I would invite the Court's attention to the excerpt at page 238. There's an actual arbitration provision between RHC, Robinson, and Beyer. So the Chinese court wasn't just pulling this arbitration out of the blue. The arbitration proceedings were started less than a year after the California trial court rejected or overruled the second motion to lift the stay. And the underlying action in the PRC was filed less than a year after the arbitration terminated. You could take the cumulative time between the accident when the California action was filed, the time from when the second motion to lift the stay was terminated, and when the arbitration was terminated until the underlying action in the PRC was filed. That's less than three years. That's less than the applicable California statute of limitations. What's the amount of money at issue in this case? It's about $5.5 million. The first company was essentially put out of business after the helicopter crashed for at least several years. I assume all attempts to settle this have failed. Thus far. Fourteen years later. All right. This case will be submitted, and the session of this Court will adjourn for the
judges: Trott, Wardlaw, Fisher